BURLINGTON TOWNSHIP v. S. K. CROSS, *et al.*

ACTION; EQUITY; *When Party must resort to Legal, not Equity Proceedings.* A township issued to a firm certain bonds for the purpose of aiding said firm in erecting a certain mill and mill-dam; and in consideration for said bonds, C., a member of said firm, gave to said township his certain promissory notes and a mortgage. These notes and this mortgage were to be paid in money, or in said bonds, at the option of the payor of said notes and mortgage. No such payment, however, nor offer to pay, has ever been made. None of the bonds have ever

been returned to the township, and no offer to return any of them has ever been made; and what has become of the bonds, since their delivery to said firm, has not been shown. *Held*, that an action in the nature of a bill in chancery, brought by C. against said township to have said notes and mortgage set aside and canceled, on the ground that said township had no power to issue said bonds, cannot under the circumstances of this case, even admitting that said township had no power to issue said bonds, be maintained; but the plaintiff must rely upon his ordinary legal remedy.

*Error from Coffey District Court.*

ACTION by *Cross* and another, to set aside and cancel certain notes and mortgage. The facts are sufficiently stated in the opinion, *infra.* The petition described the notes and mortgage, and alleged that they were given without legal and sufficient consideration. The answer contained two defenses — first, a general denial; second, the contract between the plaintiffs and the township of Burlington, and the issue and delivery of the bonds of said township to plaintiffs' firm to the amount of $10,000, for which bonds said notes and mortgage were given. To the second defense plaintiffs demurred. The district court, at the December Term 1873, sustained the demurrer, and gave judgment in favor of the plaintiffs, adjudging said notes and mortgage to be utterly void, and decreeing that the defendants, *Hiram McAllister*, as trustee of Burlington township, and said *Burlington Township*, "surrender the said promissory notes and mortgage to said plaintiffs, and that the trustee of said township, within ten days from this date enter a release of said mortgage on the margin of the record thereof in the book of mortgages in the office of the register of deeds of said county of Coffey; and that in case said defendants fail for ten days from this date to enter a discharge of said mortgage, then this judgment and decree shall operate to fully satisfy and discharge said mortgage on the records of said county; and the said defendants are hereby forever enjoined and restrained from selling or disposing of said notes and mortgage, or from ever trying in any manner or way to collect the same." From this decree the defendants appeal, and bring the case here on error.

*A. M. F. Randolph,* for plaintiffs in error:

The plaintiffs below in their petition ask for the rescission of a certain contract and for the delivery up of certain notes and a mortgage, and for the cancellation of said mortgage on the records, because of the alleged illegality and alleged failure of the consideration for which said notes and mortgage were given—the consideration thereof being certain bonds of Burlington township issued for the purpose of aiding them in the improvement of their water-power and mill privileges, and putting in operation a flouring mill at and near the town of Burlington. They claim that the transactions out of which said notes and mortgage arose are vitiated by the illegality of the bonds of said township. They however allege no fraud perpetrated upon them by said township, or its trustee, in making said contract; nor do they set up any false and fraudulent representation which induced them to take said bonds and give for the same said notes and mortgage; nor do they claim that said township in any manner took advantage of their ignorance and inexperience; nor do they state facts which show that in case the contract should be rescinded that the parties can be put *in statu quo;* nor do they allege that they have not received value for said bonds; nor have they ever offered to return said bonds, nor do they now offer to do so; nor do they aver that they have suffered any pecuniary loss or damage by reason of the alleged illegality of said bonds. (Adams' Equity, 174, 176, 177, and notes.) Since plaintiffs below ask for equitable relief, they should remember the maxim, "He who asks equity must do equity."

*W. A. Johnson,* and *Redmond & Junkins,* for defendants in error.

The opinion of the court was delivered by

VALENTINE, J.: This was an action in the nature of a bill in chancery, brought by S. K. Cross and Thomas Cross against Hiram McAllister, as trustee of Burlington township,

and also against said Burlington township, to set aside and cancel five certain promissory notes, and a certain real-estate mortgage made to secure the payment of said notes. One of the notes reads as follows:

"$2,000. BURLINGTON, KAS., February 27, 1871.

"One year after date I promise to pay to Burlington township, Coffey county, Kansas, or to the order of the township trustee of said township, in money, or in the bonds of said township issued to D. Cross & Sons, two thousand dollars, value received. S. K. CROSS."

The other notes are precisely like this one, except that they are made payable in two, three, four, and five years after date; respectively. They aggregate in amount the sum of ten thousand dollars. They were given for a like amount of the bonds of Burlington township issued to D. Cross & Sons, of which firm S. K. Cross was a member. It is claimed that said bonds are void, because they were issued to said D. Cross & Sons merely for the purpose of assisting them in erecting a mill and mill-dam in said Burlington township. It is not claimed that said bonds are void because of any fraud or mistake of facts, or because of any irregularity in their issue; but it is claimed that they are void solely on the ground that Burlington township had no power to issue them. Now for the purposes of this case, but without deciding the question, we shall assume that said bonds are void, and void merely because the township of Burlington had no power to issue them. And upon this hypothesis, or assumption, can the plaintiffs below maintain this action? Upon what ground do they invoke the aid of a court of equity, rather than the aid of a court of law? Not upon the ground of fraud, accident, or mistake; not upon the ground of any breach of confidence or trust; not upon the ground that confiding innocence has been overreached by far-seeing vice; for none of these things are claimed. Not upon the ground that the plaintiffs have no adequate remedy by the ordinary course of proceedings at law, and not upon the ground that the plaintiffs will suffer any great or irreparable injury, or indeed any injury, which

it would be inequitable for them to suffer; for presently we shall show that the plaintiffs have an ample remedy at law, and that there is no danger of their suffering more than it is equitable and right for them to suffer. Admitting that said bonds are void, and that they were the sole consideration for said notes and mortgage, the plaintiffs then claim that they can maintain this action solely upon the ground "that the trustee of Burlington township neglected and refused, on the demand of said plaintiffs, to deliver said notes and mortgage up to said plaintiffs, but thereafter did and does claim that he will collect the same when they become due, whereby said plaintiffs would be liable on said notes and mortgage." We however think differently. Said notes are not negotiable instruments. (Gen. Stat. 114, §1; 1 Parsons on Notes, 45, et seq., and cases there cited.) Even if it be considered that they are made payable to the order of the township, or to the order of its trustee, so as to make them negotiable in that respect, yet still they are not made payable in "money certain." They are made payable alternatively, either in money, or in said supposed worthless bonds, at the choice and option of the payee of the notes. Hence they cannot be transferred to any one so as to defeat any defense which may be set up against them. They can never be collected against the will of the payor, except by an action in the courts; and whenever such an action may be commenced, the payor, or any one in privity with him, may set up any defense which he may have. Besides, if the payor chooses he may at any time pay off said notes by returning to the township said worthless bonds. These remedies are certainly ample, and the plaintiffs have no need of the present action. But if no action for the collection of said notes shall ever be commenced, so as to allow the plaintiffs to set up their defense, then the plaintiffs can certainly suffer no injury, or at most none which they ought not to suffer. They lose nothing by waiting. The statute of limitations will not run against them on said notes and mortgage, but will run in their favor. But if it be said that the notes and mortgage should not be allowed to hang over them

until the statute of limitations shall bar any action upon them, then it may be answered that the plaintiffs ought not to allow said bonds to hang over said township until the statute of limitations shall bar all action upon the bonds. It will take just as long for the statute of limitations to bar an action upon the bonds as upon the notes and mortgage. The prayer of the plaintiffs' petition is, that the defendant shall be required "to deliver up to said plaintiffs said notes and mortgage, and that said mortgage may be canceled on the records." Now it would be inequitable and unjust to require the township to deliver up the notes and mortgage, and have them canceled, and yet allow the plaintiffs to retain the bonds, which we suppose are apparently, and upon their face, as good and as valid as the notes and mortgage. We suppose that all the instruments upon their face appear to be valid, although we have no copy of the mortgage, nor of any of the bonds. And as the notes and mortgage were given for the bonds, and the bonds for the notes and mortgage, and as all are apparently valid, but in fact void, it would seem to be just and equitable that when one set of the instruments is delivered up and canceled, the other set should also be delivered up and canceled. The township has as much interest in protecting its reputation and character for paying its debts, as the plaintiffs have in protecting their reputation and character for paying their debts. The township no more wants bonds, apparently good and unpaid, to be standing out against it, than the plaintiffs want notes and a mortgage apparently good and unpaid to be standing out against them. The reputation of repudiating what appear to be valid debts, will injure the credit of the township as much as the same thing would injure the credit of the plaintiffs. The township would no more want to go into the market to sell really valid bonds, while these apparently-valid but void bonds are still outstanding, and apparently due and unpaid, than the plaintiffs would want to go into the market with really valid notes and a valid mortgage while these apparently-valid but really invalid notes, and this apparently-valid but really invalid

mortgage, are outstanding apparently due and unpaid. Let the plaintiffs do equity before they seek equity. There is no pretense that said bonds have ever been lost, or destroyed, or transferred from D. Cross & Sons to any one else. And it will be remembered, that the plaintiffs are members of the firm of D. Cross & Sons. If the bonds have in fact been lost, destroyed, or transferred, the plaintiffs should show it. But still we do not suppose that merely showing that the bonds have been transferred, if transferred for *value*, would be sufficient to authorize the plaintiffs to maintain this action. If the plaintiffs, or D. Cross & Sons, have sold the bonds to other persons for a valuable consideration, and are still enjoying the benefits of that valuable consideration, how in the name of equity can they ask to be relieved from paying anything for the bonds, and thereby force the township either to lose the value of the bonds, or repudiate the payment? And how in the name of equity can they compel the township to repudiate their bonds, and thereby compel the purchasers of the bonds to lose what they have paid for them? Why do not the plaintiffs gather up these supposed worthless bonds and return them to the township? This would be equity on the part of the plaintiffs; and by doing this the plaintiffs would then have the equitable right to ask that their notes and mortgage should be delivered up to them, and that they be canceled.

The judgment of the court below must be reversed, and cause remanded, with the order that the demurrer to the second defense stated in the answer of the defendant be overruled, and for such further proceedings as may be proper in the case.

All the Justices concurring.